UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHANIE M. REDDING,

    *Plaintiff*,

  v.

ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security,

    *Defendant.*

No. 22-cv-3264 (DLF)

## MEMORANDUM OPINION

In this action, Stephanie M. Redding seeks relief for alleged disability discrimination by the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. Before the Court is the Secretary of Homeland Security's Motion to Dismiss or, in the Alternative, for Summary Judgment, Dkt. 13. For the reasons that follow, the Court will grant the Secretary's motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure and deny as moot the Motion for Summary Judgment.

**I.    BACKGROUND**

Redding began working for the Transportation Security Administration ("TSA") on March 13, 2011. First Am. Compl. ¶ 15, Dkt. 12. In March 2016, she was assigned to work at the TSA's headquarters in Reston, Virginia. *Id.* ¶ 20. Redding suffers from severe myopia and chronic dry eyes, and in 2017, she communicated with TSA officials about her "uncorrected vision no longer me[eting] the requirements for duty." *Id.* ¶¶ 16, 24. On September 28, 2017, Redding applied for immediate disability retirement with the Office of Personnel Management ("OPM"). *Id.* ¶ 26. Before OPM acted on her application, Redding requested from the TSA a reasonable-

accommodation reassignment on January 11, 2018 "due to [her] inability to perform the essential duties of [her] current position." *Id.* ¶ 32.  She learned that "there were no vacant or anticipated vacant positions within the TSA that could accommodate" her, and on May 27, 2018, she was reassigned to work as a Law Enforcement Specialist (Special Instructor) at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia.  *Id.* ¶¶ 34, 37.  According to Redding, the "reassignment was improper" because she "did not hold the requisite experience and required training to be qualified for the position." *Id.* ¶ 38.  She "struggled with the conditions" at FLETC and sought reconsideration of the reassignment. *Id.* ¶¶ 39–45.

On October 1, 2019, OPM approved Redding's September 28, 2017 disability-retirement application.  *Id.* ¶ 48.  Under federal law, FLETC lacked authority, however, to process her retirement application because she no longer worked for the TSA and had accepted a reasonable-accommodation reassignment.  *Id.* ¶¶ 51, 64.  To receive disability retirement, Redding would need to reapply as a FLETC employee.  *Id.* ¶¶ 56, 59.

On January 6, 2020, FLETC placed Redding on Absent Without Leave status, and on March 4, 2020, she received a Notice of Proposed Removal, charging her with "Excessive Absences, AWOL, and Failure to Follow Instructions."  *Id.* ¶¶ 69–70.  On June 4, 2020, FLETC issued a Notice of Decision on Proposed Removal, sustaining all charges.  *Id.* ¶ 73.  Effective June 17, 2020, Redding was terminated.  She filed a disability-discrimination complaint with the Equal Employment Opportunity Commission, which found there was no discrimination.  *Id.* ¶ 12(e)–(f).

Redding has filed suits against all three agencies involved.  *First*, Redding sued the TSA, and this Court transferred the case to the Eastern District of Virginia.  *See* Mem. Op., *Redding v. Mayorkas* ("*Redding I*"), No. 22-cv-2174 (D.D.C. Mar. 27, 2023), Dkt. 12.  A judge in the Eastern District of Virginia subsequently dismissed for failure to state a claim.  *See* Mem. Order, *Redding*

*v. Mayorkas*, No. 23-cv-1325 (E.D. Va. Feb. 5, 2024), Dkt. 35.  Redding has a pending Fourth Circuit appeal and petition for a writ of mandamus in the D.C. Circuit.  *See Redding v. Mayorkas*, No. 24-1141 (4th Cir.); *In re Redding*, No. 23-5222 (D.C. Cir.).  *Second*, Redding sued OPM, and this Court dismissed one count for failure to exhaust and transferred the remaining count to the Federal Circuit.  *See* Mem. Op., *Redding v. Ahuja* ("*Redding II*"), No. 21-cv-2449 (D.D.C. Sept. 18, 2023), Dkt. 41.  Redding's appeal and petition for a writ of mandamus are pending before the D.C. Circuit.  *See Redding v. Ahuja*, No. 23-5225 (D.C. Cir.).  *Third*, in a suit similar to this one, Redding sued FLETC in the Northern District of Georgia, and her case was then transferred to the Southern District of Georgia.  *See* Order, *Redding v. Mayorkas* ("*Redding III*"), No. 21-cv-2344 (N.D. Ga. Mar. 7, 2022), Dkt. 20.  The Southern District of Georgia then transferred the action to the District of Columbia, *see Redding v. Mayorkas*, No. 22-cv-22, 2023 WL 113050 (S.D. Ga. Jan. 5, 2023), but on February 10, 2023, Redding voluntarily dismissed her suit, *see* Notice of Voluntary Dismissal, *Redding v. Mayorkas*, No. 23-cv-64 (D.D.C. Feb. 10, 2023), Dkt. 52.

On the same day she dismissed *Redding III*, Redding filed the First Amended Complaint in this suit ("*Redding IV*") against FLETC for discrimination under the Rehabilitation Act, 28 U.S.C. § 794.  She alleges that FLETC "ignored" her "requested accommodations," "disciplined" her, and "unlawfully removed" her.  First Am. Compl. ¶¶ 97–99.  The Secretary moves to dismiss for improper venue and failure to state a claim or, in the alternative, for summary judgment.

## II.  LEGAL STANDARDS

When a plaintiff files suit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); *see also* Fed. R. Civ. P. 12(b)(3).  To prevail on a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, "the

3

defendant must present facts that will defeat the plaintiff's assertion of venue." *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011) (citation omitted). "Nevertheless, the burden remains on the plaintiff to establish that venue is proper since it is the plaintiff's obligation to institute the action in a permissible forum." *Slaby v. Holder*, 901 F. Supp. 2d 129, 132 (D.D.C. 2012) (cleaned up). If venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

"In considering a Rule 12(b)(3) motion, the Court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Tower Lab'ys, Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 323 (D.D.C. 2018) (cleaned up). But the Court need not "accept the plaintiff's legal conclusions as true," and it "may consider material outside of the pleadings." *Id.*

### III.   ANALYSIS

The Court will grant the Secretary's motion and dismiss this suit for improper venue.

#### A.   Venue

Redding filed this suit under the Rehabilitation Act. First Am. Compl. ¶¶ 93–101. "[T]he proper venue for litigating a Rehabilitation Act claim is determined by the special venue provisions of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(f)(3)." *Beaird v. Gonzales*, 495 F. Supp. 2d 81, 83 n.3 (D.D.C. 2007); *see* 28 U.S.C. § 794(a)(1) (incorporating the procedures of 42 U.S.C. § 2000e-5(f) into the Rehabilitation Act). Under these provisions, venue is appropriate in: (1) "any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered," or (3) "in the judicial district in which the aggrieved person

4

would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). If the defendant is not found within any of these three districts, the plaintiff may bring suit in "the judicial district in which the [defendant] has [its] principal office." *Id.*

As in *Redding I*, Redding has not alleged sufficient facts to establish that venue is proper in the District of Columbia under any of these prongs. *See* Mem. Op. at 3–5, *Redding I*. First, none of the allegedly "unlawful employment practice[s]" occurred in this District. 42 U.S.C. § 2000e-5(f)(3). "Courts . . . determine venue by applying a 'commonsense appraisal' of events having operative significance." *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 277 (D.D.C. 2002) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). "[V]enue cannot lie in the District of Columbia when a substantial part, if not all, of the employment practices challenged . . . took place outside the District." *Id.* (cleaned up). Redding alleges that she faced unlawful discrimination when FLETC "ignored" her accommodation requests, "disciplined" her by changing her status to AWOL, and "remov[ed] [her] from Federal service." First Am. Compl. ¶¶ 97–99. But as Redding alleges, and as a FLETC Human Capital Officer represents, the allegedly unlawful acts and related FLETC decisions occurred in the Southern District of Georgia. *Id.* ¶¶ 37, 53; *see* Porter Decl. ¶¶ 3, 4, Dkt. 13-3. Redding does not contest, *see* Opp'n at 10–12, that "FLETC made no decisions pertaining to [her] employment from the District of Columbia," Porter Decl. ¶ 5. Venue is thus proper in the Southern District of Georgia under this prong.

In *Redding III*—Redding's initial case against FLETC—the Southern District of Georgia concluded that venue was also proper in the District of Columbia under this prong. It reasoned that "while [Redding] was ultimately terminated . . . in the Southern District of Georgia, weaved within [her] allegations are actions taken by employees at FLETC, TSA, and OPM, in Georgia, Virginia, and the District of Columbia, respectively." *Redding III*, 2023 WL 113050, at *3. This

Court respectfully disagrees.  The First Amended Complaint lacks allegations that any "unlawful employment practice" by OPM is attributable to FLETC, the only defendant in this case.  Indeed, Redding filed a separate action against OPM.

Second, Redding has failed to suggest "employment records relevant to such practice[s] are maintained and administered" in the District of Columbia.  42 U.S.C. § 2000e-5(f)(3).  A FLETC Human Capital Officer represents that "FLETC's employment records regarding Ms. Redding are in the Southern District of Georgia, with the exception of her interagency Personnel Records . . . which are located in the Eastern District of Missouri at the National Personnel Records Center."  Porter Decl. ¶ 6.  Such "[d]eclarations of human resource officers and employers are sufficient to establish where the employment records are maintained and administered." *Kendrick v. Potter*, No. 06-cv-122, 2007 WL 2071670, at *3 (D.D.C. July 6, 2007); *see also Slaby*, 901 F. Supp. 2d at 134.  Neither the First Amended Complaint nor Redding's opposition brief contest this representation.  Under the second prong, venue is thus proper either in the Southern District of Georgia or the Eastern District of Missouri.

Third, Redding has failed to allege any facts that she "would have worked" in the District of Columbia "but for the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(f)(3).  Rather, she alleges that she was "unlawfully removed from" her employment at FLETC, and FLETC should have granted her "requested accommodations" to continue working there.  First Am. Compl. ¶¶ 97, 99.  So under this prong too, venue lies in the Southern District of Georgia.

Finally, the "residual" venue provision of 42 U.S.C. § 2000e-5(f)(3) does not apply.  "By its plain terms, this fourth residual basis for jurisdiction is only available when the defendant cannot be found within any of the districts provided for by the first three bases."  *Slaby*, 901 F.

6

Supp. 2d at 134–35 (cleaned up).  Here, the residual cause is not triggered because the first three prongs of § 2000e-5(f)(3) point to venue in specific districts—just not the District of Columbia.

Contrary to Redding's contention, the law of the case does not alter the above analysis. *See* Opp'n at 10–12.  *Redding III* was transferred from the Southern District of Georgia to the District of Columbia, so in her view, a "re-transfer" of *Redding IV* to the Southern District of Georgia would fail to respect the law of the case.  *Id.* at 11.  Redding is mistaken.  As a preliminary matter, "the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the *same case*." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (emphasis added) (cleaned up).  Plainly, this is a different case than *Redding III*, which the plaintiff voluntarily dismissed with prejudice.  To the extent that Redding is unable to benefit from law-of-the-case principles to avoid transfer back to the Southern District of Georgia, that is a consequence of her own litigation decisions.

Even if the Court treated the law-of-the-case doctrine as a law-of-the-similar-cases doctrine, *see* Opp'n at 10, it would still hold that venue is improper.  "Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Christianson*, 486 U.S. at 819.  With the utmost respect to the U.S. District Court for the Southern District of Georgia, the Court cannot conceive of a plausible basis for finding that venue is proper in the District of Columbia based on Redding's complaint here.  Indeed, the complaint lacks allegations tying FLETC to the District of Columbia or attributing OPM's conduct to FLETC, and the Court may not read such allegations into the complaint.  Although the Court takes seriously the risk of a "perpetual game of jurisdictional ping-pong," such concerns are

attenuated here because, as stated in Section III.B, the Court concludes that Redding has failed to state a claim and will dismiss this action. *Id.*

**B.     Dismissal**

Dismissal under Rule 12(b)(3) is warranted for two reasons. First, Redding fails to state a claim. Although "the standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it," *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001), the Court may dismiss for improper venue "when the outcome is foreordained," *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997). *Accord McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 54 (D.D.C. 2014). The D.C. Circuit has held that a district court may dismiss rather than transfer when a complaint contains "substantive problems," *Buchanan v. Manley*, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998), and transfer would merely keep "the case alive only until the next court looked it over and found it wanting," *Simpkins*, 108 F.3d at 371.

Here, transfer would merely delay the inevitable because Redding has failed to state a claim for disability discrimination under the Rehabilitation Act. To do so, a plaintiff must show "(1) that the employee had a disability within the meaning of the Act, (2) that the employee was otherwise qualified for the position with or without reasonable accommodation, and (3) that the employee suffered an adverse employment action solely because of her disability." *Von Drasek v. Burwell*, 121 F. Supp. 3d 143, 160 (D.D.C. 2015); *see* 29 U.S.C. § 794(a). The Rehabilitation Act incorporates the standards applied under the Americans with Disabilities Act, *see* 29 U.S.C. § 794(d), which in turn define a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," 42 U.S.C. § 12111(8). "[T]hat is, an individual with handicaps is 'qualified' if she can perform the essential functions of her position with reasonable

8

accommodation. If she can perform these functions *without* reasonable accommodation, so much the better—she is, of course, still qualified." *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994).

The First Amended Complaint alleges that Redding's "reassignment" at FLETC "was improper as [she] did not hold the requisite experience and required training to be qualified for the position assigned to the Behavioral Science Division." First Am. Compl. ¶ 38. Redding "had difficulty with the conditions of the assignment to FLETC" and had "ongoing conversations with FLETC personnel regarding . . . reconsideration of the reassignment as an accommodation." *Id.* ¶¶ 57–58. Redding thus concedes that she could not, without accommodation, perform the essential functions of her FLETC position. Further, she also fails to allege that a reasonable accommodation would have enabled her to do so. Redding attempted "to locate a suitable accommodation, including telework, reassignment, use of accrued sick leave, use of advanced sick leave, and use of annual leave," but she does not allege, at any point, that such "accommodations" (assuming they can even be so classified) would have enabled performance of the essential functions of her position at FLETC. *Id.* ¶ 42. Redding has thus failed to plead that "with or without reasonable accommodation" she could "perform the essential functions" of her job at FLETC. 42 U.S.C. § 12111(8). She has thus failed to state a claim under the Rehabilitation Act.

Her arguments to the contrary are unavailing. She contends that the First Amended Complaint's use of the word "qualified" was in a "sense . . . different from the term 'qualified individual' [a]s used in the ADA." Opp'n at 6. But Redding never clarifies, and the Court is unable to determine, in what other "sense" she used the word "qualified." Redding further argues that "FLETC expressed no concerns that [she] was unable to perform the job's essential functions." *Id.* at 12. The burden of establishing qualification under the Rehabilitation Act, however, rests with Redding, not FLETC. *See Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014) (noting the

plaintiff must "produce sufficient evidence that . . . she was a qualified individual with a disability"); *Graffius v. Shinseki*, 672 F. Supp. 2d 119, 126 (D.D.C. 2009) ("The employee has the burden of identifying reasonable accommodations."). And Redding points to no authority suggesting the Court must consider an employer's subjective belief about the employee's ability to perform the essential functions of her position.

Redding also argues that her "FLETC position was supposed to be a holding spot for [her] while OPM considered her disability retirement." Opp'n at 12. But she does not identify any source of law requiring FLETC to provide jobs to federal employees as "holding spot[s]," much less any authority finding that an agency's failure to provide a holding spot might constitute an adverse employment action.

Second, transfer would not be "in the interest of justice." 28 U.S.C. § 1406(a). Redding claims *Redding I*, *Redding II*, and *Redding IV* "are inextricably intertwined" because "FLETC, TSA, and OPM acted together." Opp'n at 1. And yet she brought three separate lawsuits, now pending before different courts. *Redding I* is pending before the Fourth and D.C. Circuits, and *Redding II* is pending before the D.C. Circuit and will be subject to a transfer to the Federal Circuit if affirmed. If the Court were to transfer this case, the appropriate forum would likely be the Southern District of Georgia. The Court can only speculate as to why Redding divided the litigation in this manner and initially filed in different districts. But litigation tactics often burden multiple courts and prevent efficient adjudication. That is certainly evident here: two courts have passed on the proper venue of her FLETC claims and two have carefully rejected her discrimination claims for similar reasons. Because Redding's claims lack merit, the Court will dismiss, rather than transfer this case. In so doing, the Court declines to stay this action until the D.C. Circuit decides *Redding I*. *See* Pl.'s Opp'n to Def.'s Notice at 5, Dkt. 20. Redding provides

no justification for such a stay, and, in any event, her challenge to the transfer in *Redding I* has no bearing on the Court's analysis here.

## CONCLUSION

For the foregoing reasons, the Court will grant the Secretary's Motion to Dismiss and deny as moot the Motion for Summary Judgment. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

March 11, 2024